**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALETA LILLY, on behalf of herself and all others similarly situated, *Plaintiff-Appellant*, v. CONAGRA FOODS, INC., a Delaware corporation, *Defendant-Appellee*. | No. 12-55921 D.C. No. 2:12-cv-00225- RGK-SH OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
February 6, 2014—Pasadena, California

Filed February 20, 2014

Before: Barry G. Silverman and Andrew D. Hurwitz,
Circuit Judges, and C. Roger Vinson, Senior District
Judge.[*]

Opinion by Judge Silverman;
Dissent by Judge Vinson

---

[*] The Honorable C. Roger Vinson, Senior District Judge for the U.S. District Court for the Northern District of Florida, sitting by designation.

## SUMMARY[**]

### Federal Preemption

The panel reversed the district court's dismissal, based on federal preemption, of plaintiff's putative class action raising California state law claims and challenging the labeling of sunflower seed packages.

The panel held that the sodium content of the edible coating added to sunflower seed shells must, under federal law, be included in the nutritional information disclosed on a package of sunflower seeds. The panel further held that because plaintiff's state-law claims, if successful, would impose no greater burden than those imposed by federal law, plaintiff's state law claims were not preempted.

District Judge Vinson dissented, and would hold that the district court correctly concluded that plaintiff's attempt to require the manufacturer to use different labeling was expressly preempted by the federal Nutrition Labeling and Education Act, and the manufacturer had fully complied with the applicable Food and Drug Administration regulation.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Rosemary M. Rivas (argued) and Danielle A. Stoumbos, Finkelstein Thompson, LLP, San Francisco, California, for Plaintiff-Appellant.

Patrick E. Brookhouser, Jr. (argued), Lauren R. Goodman, and Noah Priluck, McGrath North Mullin & Kratz, PC LLO, Omaha, Nebraska, for Defendant-Appellee.

**OPINION**

SILVERMAN, Circuit Judge:

Some days we are called upon to consider such profound issues as eleventh-hour death penalty appeals, catastrophic threats to the environment, intense and existential questions of civil and human rights, and the most complicated, controversial problems in civil, criminal and administrative law. Today we consider the coating on sunflower seeds.

In her putative class action complaint, the plaintiff alleges that the tasty coating placed on sunflower seed shells is *intended* to be ingested – and *is* ingested – before the inedible shell is spat out and the kernel eaten; that is what is expected before expectoration. Therefore, the sodium content in a "serving" of sunflower seeds, as stated on the package, must include the sodium contained in the edible coating.

Taking those allegations as true for the purposes of a motion to dismiss, we hold today that the sodium content of the edible coating added to sunflower seed shells must, under federal law, be included in the nutritional information

disclosed on a package of sunflower seeds. Because plaintiff's state-law claims, if successful, would impose no greater burden than those imposed by federal law, her state law claims are not preempted. We reverse the granting of the defendant's motion to dismiss.

**FACTUAL BACKGROUND**

ConAgra Foods, Inc. sells several varieties of sunflower seeds under its "David" brand, including some in which the shells of the seeds are coated with salts, seasonings, and/or flavorings. Lilly sued ConAgra as a representative of a class of consumers who purchase these seeds. Lilly's central allegation was that ConAgra's nutrition labeling violates California law by misrepresenting the sodium content of the sunflower seeds by focusing exclusively on the kernels. More specifically, Lilly alleged that the listing of sodium in the Nutrition Facts Panel of these seeds either does not disclose the sodium content of "the sunflower seeds and the shell in the Nutrition Facts at all" or does not state the "salt content of the sunflower kernels and shells in equal prominence as it does the salt content of the sunflower kernels."

Lilly alleged that "ConAgra's Sunflower Seeds' packages expressly state that the intended manner for consuming the Sunflower Seeds is to place the entire shell and the kernel in the mouth." The complaint quoted the directions on the packaging itself: "[C]rack the shell with your teeth, eat the seed and spit the shell. Experienced seeders pop a handful of seeds in their mouth and store them in one cheek, then transfer a seed over to the other side with their tongue, crack it, then eat the seed and split [*sic*] the shell." Lilly alleged that consumers following these instructions "ingest some, if

not all, of the sodium from the sunflower seeds' shell which is not reflected in the Nutrition Facts of the Products." Lilly alleged that minimizing or altogether ignoring the sodium content on the shells in the label is misleading and that ConAgra had a duty to disclose the sodium content of both the "Sunflower Seeds' kernel and shell."

Lilly asserted causes of action under three California statutes: the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), the False Advertising Laws (Cal. Bus. & Prof. Code § 17500 *et seq.*), and the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*). ConAgra moved to dismiss the complaint, arguing that federal law expressly preempted these state law claims as they would impose food labeling requirements different from those required by federal law. The district court agreed, ruling that Lilly sought "to impose an additional sodium labeling requirement that [was] not identical to the" Nutrition Labeling and Education Act (21 U.S.C. § 343) and thus her "state law claims [were] expressly preempted." Lilly timely appealed.

## DISCUSSION

We have jurisdiction to review this appeal under 28 U.S.C. § 1291. We review an order granting a motion to dismiss de novo. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). "All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted). We also review questions of statutory interpretation and preemption *de novo*. *Aguayo v. U.S. Bank*, 653 F.3d 912, 917 (9th Cir. 2011).

The statutory and regulatory framework undergirding this case is straightforward.  The Federal Food, Drug, and Cosmetic Act of 1938, 21 U.S.C. §§ 301 *et seq.*, governs the labeling of food, drugs, cosmetic products and medical devices.  Congress amended the FDCA in 1990 by enacting the Nutrition Labeling and Education Act, which established uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages.  NLEA requires that a food's label include the amount of sodium "in each serving size or other unit of measure."  21 U.S.C. § 343(q)(1)(D).  NLEA also provides that no state may "directly or indirectly establish . . . any requirement for the labeling of food that is not identical" to the federal requirements.  21 U.S.C. § 343-1(a)(5).  The phrase "not identical to" means "that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation]."  21 C.F.R. § 100.1(c)(4).

The United States Food and Drug Administration has promulgated various regulations that are relevant to how a serving of sodium is to be calculated.  First, the regulations require that the "[n]utrition information relating to food shall be provided for all products intended for human consumption."  21 C.F.R. § 101.9(a).  Second, the "declaration of nutrient and food component content shall be on the basis of the food as packaged or purchased."  21 C.F.R. § 10 1.9(b)(9).  Lastly, and most importantly for our purposes, the amount of sodium in the food is "based on only the edible portion of food, and not bone, seed, shell, or other inedible components."  21 C.F.R. § 101.12(a)(6).

In ConAgra's view, Lilly's lawsuit is an attempt to force ConAgra into including the sodium content of an *inedible* portion of the food – the shell of the sunflower seed. Because the FDA regulations state that manufacturers need not include the amount of sodium on "inedible components," ConAgra asserts that Lilly's suit is expressly preempted by federal law. *See* 21 U.S.C. § 343-1(a)(5) (no state may "directly or indirectly establish . . . any requirement for the labeling of food that is not identical" to the federal requirements); *Williamson v. Mazda Motor of Am., Inc.*, __ U.S. __ , 131 S. Ct. 1131, 1136 (2011) (federal law preempts any state law that "'stands as an obstacle to the accomplishment and execution of [its] full purposes and objectives'") (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

But ConAgra's argument simply ignores the fact that while the shells themselves are inedible, the coatings put on top of the shells most certainly are *not* inedible. To the contrary, the coatings impart flavor and are indisputably intended to be ingested as part of the sunflower seed eating experience. Indeed, these coatings come in flavors such as "Ranch" and "Nacho Cheese" precisely because they are to be consumed before the shell is discarded. The shell is not edible, but the coating is and is intended to be. Federal law requires that the sodium listings include the "edible portion" of a food. For that reason, the portion of the edible coating on the shell must be accounted for in the calculation of the sodium content. The asserted state law requirements that Lilly seeks to impose here are thus no different from federal law and not preempted.

ConAgra argues in the alternative that dismissal of the complaint was appropriate because no reasonable consumer would be deceived by its labeling. More specifically,

ConAgra argues that since the Nutrition Facts Panel on the sunflower seeds references only the kernels, any reasonable consumer would understand that the sodium listing did not include the amount on the shells.

The district court never reached this issue, and as we have noted before, "'whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss].'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). This is the situation here. There may be any number of fact-specific reasons for why ConAgra's sodium-content labeling does not violate the California statutes invoked by Lilly. But these issues must await summary judgment or trial. The question before us at this point is whether Lilly's action is facially preempted by federal law. It is not.

**REVERSED and REMANDED.**[1]

---

VINSON, District Judge, dissenting:

"A regulation should be construed to give effect to the natural and plain meaning of its words." *Crown Pacific v. Occupational Safety & Health Review Comm'n*, 197 F.3d 1036, 1038–39 (9th Cir. 1999) (quotation marks and citation omitted). The critical regulation here naturally and plainly states that the amount of sodium for food labeling purposes is "based on only the edible portion of food, and not bone,

---

[1] Lilly's pending motion for judicial notice is denied as moot.

seed, *shell*, or other inedible components." 21 C.F.R. § 101.12(a)(6) (emphasis supplied). It is undisputed that the sunflower seed shells at issue in this case are inedible. Thus, it seems apparent to me that the District Court correctly concluded that Lilly's attempt to require ConAgra to use different labeling in California is expressly preempted by the NLEA, and ConAgra has fully complied with the applicable FDA regulation. Food companies have the *option* of including clarifying statements about the inedible portions — and some have — but they are not *required* to do so.

Although we might prefer a regulation that includes the shell's absorbed salt and to draw a distinction between an edible "coating" and an inedible shell, we are nonetheless bound to apply this unambiguous regulation objectively as it has been written. In my view, it is not currently written to allow such a nuanced distinction. The FDA could, of course, have drafted the regulation in any detail that it wanted (and it could still do so now), making distinctions such as the one favored by the majority today.[1] Because courts are not — and should not be — in the regulation-writing business, I believe we should leave that task to the FDA in the first instance.

Therefore, I respectfully dissent.

---

[1] Despite our wishes otherwise, there are no page or word limits on federal regulations. In its rulemaking proceeding and in the exercise of its regulatory discretion, the FDA could have easily provided that the amount of sodium for food labeling purposes is "based on only the edible portion of food, and not bone, seed, shell, or other inedible components, *but salt added to the inedible components and intended for consumption must be included.*" However, it did not.